LILLIAN R. GIRARD *vs.* UNITED STATES RUBBER COMPANY.

JUNE 18, 1957.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

ROBERTS, J. This is an employee's original petition for compensation and medical expenses under the workmen's

compensation act, general laws 1938, chapter 300, as amended by public laws 1954, chap. 3297. The case was heard by a trial commissioner, who on May 5, 1955 entered a decree wherein it was found that petitioner had suffered an injury to her back which resulted in coccygodynia and injuries to her head in the left occipital region which developed into an occipital neuralgia. It was also found that she had been totally disabled from July 31, 1954 to December 17, 1954.

The respondent took an appeal from this decree to the full commission, and on December 2, 1955 a decree was entered affirming the decree of the trial commissioner. The case is here on the respondent's appeal from that decree. The respondent was allowed to prosecute its appeal after complying with the provisions of P. L. 1954, chap. 3297, art. III, secs. 4 and 7. See *Girard* v. *United States Rubber Co.*, 84 R. I. 230, 127 A.2d 242.

The respondent's appeal is based primarily on the contention that the trial commissioner erred in granting the employee's petition, which was filed November 27, 1954, because it had not been brought within two years after the cause of action arose as is required by the statute. The respondent contends that petitioner's compensable incapacity began at the time of the injury on February 11, 1952 and that under the case of *Rosa* v. *George A. Fuller Co.*, 74 R. I. 215, the two-year period expired prior to November 27, 1954. It also urges that the decision and the decree are not supported by legal evidence of probative value and that certain evidence was improperly admitted or excluded.

The petitioner was injured on February 11, 1952. It appears that in the course of her employment it was her practice to sit on a chair while operating the machine to which she was assigned. It further appears that on that date the chair had been moved without her knowledge, and when she went to sit down she fell to the floor and sustained injuries to her back and head. It is not substantially dis-

puted that petitioner did not complete her day's work on February 11 or that she did not work at all on the next day. She did not recall working on February 13, but on February 14 she worked at a temporary job, earning less money than her regular wage. On February 15 she resumed her regular employment. Thereafter petitioner took leaves of absence. The first of these extended from December 29, 1952 to February 3, 1953; another from May 22 to November 2, 1953; and on August 1, 1954 she began her annual two weeks' vacation. After the vacation had terminated, she took another leave of absence made retroactive to July 31, 1954. On December 17, 1954 she returned to work and has been working continuously since that date.

The question of whether the petition in the instant case was filed within the two-year period required by art. III, §17, of the act depends upon the date on which the cause of action accrued to the employee by reason of the onset of compensable incapacity. In the *Rosa* case, *supra,* we held that the statutory period of limitation for the filing of petitions began to run when a cause of action against the employer accrued to the employee and that such cause of action accrues when the employee has, by reason of the injury, been incapacitated from earning full wages for at least three days.

The respondent argues vigorously that the commission misconceived the law applicable to the establishment of an employee's right to be compensated for incapacity when it failed to find that petitioner was disabled within the meaning of art. II, §4, of the act prior to November 27, 1952, or more than two years before she filed her petition on November 27, 1954. Section 4 provides that the right to be paid compensation for incapacity accrues only when the employee has been incapacitated "for a period of at least 3 days from earning full wages." It is respondent's contention that the three days need not run consecutively. In our opinion this concept of the law is incorrect. The three

days contemplated by the provision cited above is a *period* of three consecutive days, on each of which the employee is by reason of his injury unable to earn wages, and that period does not include the day of the injury.

In this case the petition was filed on November 27, 1954, and it appears from the record that the commission, in the decree appealed from, found that the compensable incapacity of petitioner began on July 31, 1954. If this finding as to the onset of compensable incapacity is conclusive, it is clear that the petition was filed within the time required by the statute, and it is well settled that the findings of the commission, if supported by legal evidence, are binding upon this court. *Burns* v. *Rhode Island Tool Co.*, 79 R. I. 169.

The respondent's further contentions concerning the absence of legal evidence of probative value and the improper admission and exclusion of evidence appear to have been intended to raise the question of whether this petitioner met the burden imposed upon her of proving her case by credible evidence of probative force. *Cruso* v. *Yellow Cab Co. of Providence*, 82 R. I. 158, 106 A.2d 734. This question bears directly upon the basic issue of whether the decree of the commission is supported by legal evidence and therefore binding on this court. For that reason we will examine the evidence to determine that issue.

The petitioner testified that after she fell on February 11, 1952, she suffered back pains and recurring headaches which increased in intensity, duration and frequency until in July 1954 she was compelled to stop working because of them. Early in August 1954 she consulted her personal physician Dr. J. Gerald Lamoureux concerning the headaches and was referred by him to Dr. Thomas L. Greason, a specialist in neurology and psychiatry. Doctor Greason examined her for the first time on August 16, 1954, more than two years after her fall. He referred petitioner to

Dr. David J. LaFia, a neurosurgeon, who examined her on October 14, 1954 and several times thereafter.

At the hearing Dr. Greason was permitted to testify, over respondent's objection, to the history given him by petitioner relating to her fall and her condition between February 1952 and August 1954 as well as to the findings he made as a result of his examination of August 16, 1954. The doctor then testified that his diagnosis of petitioner's condition was "(1) * * * traumatic occipital neuralgia, left, (2) coccydynia, (3) psychoneurosis, anxiety, aggravated by the prolonged symptomatic distress." The respondent's motion to strike that testimony was denied. The doctor was then permitted to testify, over respondent's objection, that petitioner was disabled by reason of the traumatic occipital neuralgia and that this condition was consistent with the head injury which she told him she sustained on February 11, 1952.

Doctor Greason further testified, without objection from respondent, concerning a second examination of petitioner on September 20, 1954, stating that in his opinion she was disabled from doing her work when he examined her on August 16 and also on September 20 by reason of occipital neuralgia and psychoneurosis. Thereafter petitioner moved that two reports in writing prepared by Dr. Greason for submission to her personal physician, after each of the examinations above referred to, be admitted in evidence. The reports were so admitted without objection from respondent.

In our judgment there is evidence which supports the decision of the commission that petitioner's disability began on July 31, 1954. The testimony of petitioner and that of Dr. Greason, taken together, satisfy our rule concerning the conclusiveness on this court of findings of the commission which are supported by legal evidence.

There remains only the question of the competency of the medical evidence, which respondent raises by contend-

ing that it was improperly admitted; that the doctor was an examining and not an attending physician; that his examinations were remote from the injury in point of time; and that the history given him by petitioner contained self-serving statements.

Whatever might be the merit of these objections in the ordinary case, the fact is that in this case the written reports of Dr. Greason prepared for submission to petitioner's personal physician were admitted in evidence without objection on the part of respondent. These reports recite in substantial detail the history given the doctor by petitioner, his finding on examination, and his diagnosis. If the reports do not specifically recite his opinion that petitioner's disability resulted from the occipital neuralgia, the record reveals that when being questioned concerning his examination of September 20, he testified, without objection by respondent, that she was disabled from work both on August 16 and September 20 by reason of traumatic occipital neuralgia.

The evidence to which we have made reference appears in the record and, in our opinion, constitutes legal evidence to support the decision of the commission that the compensable incapacity of petitioner began on July 31, 1954, and hence supports our holding that the commission did not err when they found that the petition in this case was filed within the period required by art. III, §17, of the act. We are also of the opinion that petitioner has introduced credible evidence of probative force upon which the commission could find that she had discharged the burden of proof resting upon her. The respondent's other reasons of appeal have been examined by us and in the circumstances we find them to be without merit.

The respondent's appeal is denied and dismissed, the decree appealed from is affirmed, and the cause is remanded to the workmen's compensation commission.

484

FLYNN, C. J., did not participate in the decision.

*Michaelson & Stanzler, Milton Stanzler,* for petitioner.

*Ambrose W. Carroll,* for respondent.